**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**


| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel.** ) | |
| **RICKEY QUEZADA,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **No. 06 C 0802** |
| ) | |
| **ALAN UCHTMAN,** ) | |
| **Respondent.** ) | |


## <u>MEMORANDUM OPINION</u>

SAMUEL DER-YEGHIAYAN, District Judge


This matter is before the court on Petitioner Rickey Lee Quezada's ("Quezada")

petition for writ of *habeas corpus*. For the reasons stated below, we deny Quezada's

petition for writ of *habeas corpus*.


## BACKGROUND

Following a jury trial in Kane County Circuit Court, Illinois, Quezada was

found guilty of first-degree murder and sentenced to forty-five years in prison.

1

Quezada filed a motion for a new trial, which was denied. Quezada then appealed his conviction to the Illinois Appellate Court, Second District ("Illinois Appellate Court") and on November 27, 2002, the Illinois Appellate Court affirmed Quezada's conviction. Quezada then filed a petition for leave to appeal to the Supreme Court of Illinois, which was denied on February 5, 2003. On July 31, 2003, Quezada filed a post-conviction petition in Kane County Circuit Court. After an evidentiary hearing and arguments from counsel, the court denied post-conviction relief on March 15, 2004. Quezada filed the instant petition for a writ of *habeas corpus* ("Petition") on February 13, 2006.

## LEGAL STANDARD

A district court may entertain a *habeas corpus* petition from a "person in custody pursuant to the judgment of a State court only on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to 28 U.S.C. § 2254, a writ of *habeas corpus* will not be granted unless "the applicant has exhausted the remedies available in the courts of the State; . . . or there is an absence of available State corrective process; or . . . circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C.A. § 2254 (b)(1). *A habeas corpus* petition shall also not be

granted:

> on behalf of a person in custody pursuant to the judgment of a State court . . . unless the adjudication of the claim . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1-2). A decision by a state court is deemed to be "'contrary to' [the U.S. Supreme Court's] clearly established precedents if it 'applies a rule that contradicts the governing law set forth in [the Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from our precedent.'" *Early v. Packer*, 537 U.S. 3, 8 (2002)(quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)). A state court need not cite to Supreme Court cases in its decision, "so long as neither the reasoning nor the result of the" state court's decision contradicts such precedent. *Id.*

## DISCUSSION

In his petition for a writ of *habeas corpus*, Quezada asserts the following claims: (1) his confession was involuntary and he did not knowingly and intelligently waive his *Miranda* rights (Claim 1), (2) Quezada's counsel was ineffective because counsel failed to request that portions of Quezada's taped statement where he

exercised his right to remain silent be edited from the tape and redacted from the transcripts (Claim 2), (3) Quezada's trial counsel rendered ineffective assistance because evidence offered at a suppression hearing did not support the contention that Quezada did not knowingly and voluntarily waive his *Miranda* rights and that Quezada's testimony would have provided support (Claim 3), (4) Quezada's counsel was ineffective because counsel did not adequately discuss the trial strategy with Quezada and counsel did not prepare a defense before trial and then asserted the affirmative defense of self-defense after the trial had begun (Claim 4), (5) Quezada's trial counsel rendered ineffective assistance because the affirmative defense of self-defense was not the correct trial strategy (Claim 5), and (6) he was denied Due Process of law when the trial court considered a misdemeanor conviction of Quezada as aggravation pursuant to 735 ILCS 5/5-3-3.2A (Claim 6).

Before a state prisoner can petition for a writ of *habeas corpus* in the federal courts, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerkel*, 526 U.S. 838, 845 (1999). This means that the petitioner must properly assert each claim at each and every level in the state court system, either on direct appeal of his conviction or in post-conviction proceedings. *Id.* at 848-49; *see also Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th

Cir. 1992)(stating that "[p]rocedural default . . . occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the *habeas* petition, be presented to the state court" and that "[i]ssues which were *never* raised in the state courts are the proper subject of procedural default in this collateral review under § 2254"). Therefore, a petitioner must pursue appellate right "to the highest state court to preserve federal review." *Grigsby v. Cotton*, 456 F.3d 727, 732 (7th Cir. 2006).

A federal court can review procedurally defaulted claims, however, if a petitioner "shows cause for failure to raise them at the appropriate time and actual prejudice which resulted from such failure," or if the refusal to review would result in a "fundamental miscarriage of justice." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999). A petitioner can establish cause by "showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). To establish prejudice, a petitioner must show that the violation of his federal rights "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982). A miscarriage of justice exists "where 'a constitutional violation has probably resulted in the conviction of one who is actually innocent'" and the

petitioner can "show that it is more likely than not that no reasonable juror would have convicted him," but for the alleged constitutional violation. *Rodriguez*, 193 F.3d at 917(quoting *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)).

## I.  Involuntary Confession and Knowing & Intelligent Waiver of Rights (Claim 1)

Quezada argues in Claim 1 that statements made by him during custodial interrogation failed to comply with his *Miranda* rights.  Quezada also challenges the Illinois Supreme Court's finding that he knowingly and intelligently waived his rights, thus making his confession voluntary.  Quezada argues that his confession was involuntary and he did not knowingly and intelligently waive his *Miranda* rights.  On direct appeal of his conviction to the Illinois Appellate Court, Quezada argued that "[t]he trial court erred in failing to grant defendant's motion to suppress his statements where, under the totality of the circumstances, the fifteen-year-old defendant's confession was involuntary and the waiver of his rights was not knowingly and intelligently made."  (G. Ex. B 27).  After the Illinois Appellate Court affirmed Quezada's conviction, Quezada filed a petition for leave to appeal to the Illinois Supreme Court and argued that "the appellate court erred when it failed to hold that the trial court improperly denied defendant's motion to suppress statements there: 1) under the totality of the circumstances, the fifteen-year-old defendant's

confession was involuntary and 2) the waiver of defendant's rights was not knowingly and intelligently made." (G. Ex. E 2). Thus, Quezada has exhausted his Illinois state court remedies by giving "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" and we will examine the merits of Quezada's constitutional claim. *O'Sullivan*, 526 U.S. at 845.

In *Miranda v. Arizona*, 384 U.S. 436, 467 (1966), the Supreme Court stated that custodial interrogations are inherently coercive. The Seventh Circuit has stated that:

> "*Miranda* thus declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477 (1981). A defendant may waive effectuation of the rights articulated in *Miranda* "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. "When a *Miranda* waiver is challenged, two distinct questions are presented: whether the waiver was voluntary, knowing, and intelligent as a matter of fact, and whether it was involuntary as a matter of law. *Henderson v. DeTella*, 97 F.3d 942, 946 (7th Cir. 1996) (citations omitted).

*Jackson v. Frank*, 348 F.3d 658, 662-63 (7th Cir. 2003) (footnote omitted). A waiver is voluntary in the absence of coercion, and is knowing if made "'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Krilich*, 159 F.3d 1020, 1025-26 (7th Cir. 1998) (quoting *Moran v. Burbine*, 475 U.S. 412, 421(1986)).

A confession is involuntary only if there is: (1) police coercion or overreaching which (2) overbore the accused's will and (3) caused the confession. *See Colorado v. Connelly*, 479 U.S. 157, 165-67 (1986)(stating that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment") A confession is voluntary "if the totality of the circumstances demonstrates that it was the product of rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics calculated to overcome the defendant's free will." *Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir. 1997) (citations omitted). In determining whether a statement is voluntary, the court looks at the surrounding circumstances and the combined effect of the entire course of the officer's conduct upon the defendant. *Ruvalcaba*, 416 F.3d at 562; *see Fare v. Michael C.*, 442 U.S. 707, 725 (1979)(stating that the "totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved"); *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)(noting that "the trial court correctly recognized that it was required to apply a totality of the circumstances analysis" to a fourteen-year-old boy's confession). In applying the totality of the circumstances test, the factors that a court should consider to determine whether an accused's confession is voluntary are (1) characteristics of the accused,

such as the defendant's age, education, intelligence level, and mental state; (2)

conditions of the interrogation, such as the length of the defendant's detention, the

nature of the interrogations, and the inclusion of advice about constitutional rights;

and (3) the conduct of law enforcement officials, focusing on the use of physical

punishment, including deprivation of food or sleep. *See United States v. Brooks*, 125

F.3d 484, 492 (7th Cir. 1997)(noting factors).  To determine whether a defendant,

including a juvenile, offered a voluntary statement, a court must examine the totality

of the circumstances surrounding the interrogation.  In the context of juveniles, the

inquiry "includes evaluation of the juvenile's age, experience, education,

background, and intelligence, and [considers] whether he has the capacity to

understand the warnings given him, the nature of his Fifth Amendment rights, and

the consequences of waiving those rights."  *Hardaway*, 302 F.3d at 762.

Quezada contends, in part, that his confession was not voluntary since the

arresting officer did not immediately contact one of Quezada's parents after his

arrest, instead waiting until Quezada had been transported to the police station,

approximately one hour after the arrest.  In Illinois, a law enforcement officer who

arrests a minor without a warrant is required to "immediately make a reasonable

attempt to notify the parent or other person legally responsible for the minor's care or

the person with whom the minor resides that the minor has been arrested and where

he or she is being held." 705 ILCS 405/5-405.

As to the officer's failure to immediately contact one of Quezada's parents, the Illinois Supreme Court agreed with Quezada "that, by waiting one hour after his arrest to notify his father, the police did not satisfy the requirements of section 5-405." *People v. Quezada*, 780 N.E.2d 790, 801 (Ill. 2002). However, the Illinois Supreme Court reasoned that:

> That being said, the failure to immediately notify [Quezada's] father of the arrest does not render the confession inadmissible. It is well established that noncompliance with section 5-405 is but one factor for the court to consider when looking at the totality of the circumstances. We have examined the totality of the circumstances and conclude that [Quezada's] confession was voluntary. He was informed of his constitutional rights and indicated that he understood them. He had been arrested before and thus had experience dealing with the police. He was not under any sort of duress prior to or during his questioning. A youth officer was with [Quezada] at all relevant times and had advised him to ask for an explanation if he did not understand anything he was told. There was no indication that [Quezada's] confession had been coerced or that his will had been overcome in any way.

*Id*. at 801 (internal citations omitted). The Illinois Supreme Court also further stated:

> We reject [Quezada's] arguments that the failure to notify his mother and Detective Lullo's participation in the interrogation tainted his confession. Section 5-405 does not require the police to notify both parents (705 ILCS 405/5-405(1)) and we will not expand the scope of the statute by reading such a requirement into it. With respect to Detective Lullo, who was acting as a youth officer, we agree with the trial court that it is problematic when an officer who is supposed to protect a juvenile's rights participates in the interrogation by asking the juvenile for potentially incriminating information. The safer course of action would be for the youth officer to refrain from asking the juvenile any questions about the offense for which the juvenile was arrested. Here, however, the trial court cured any problem by granting the

motion to suppress as to any statements defendant made in response to Detective Lullo's questions.

*Id.*

Quezada's second *Miranda* contention is that he did not knowingly and

intelligently waive his rights.  However, the Illinois Supreme Court found that:

> [T]he evidence showed that [Quezada] had been enrolled in special education
> classes when he was in elementary school. At the time of the shooting, he was
> enrolled in an alternative education program.  In 1998, the year before the
> shooting, [Quezada] was earning As and Bs in his classes.  His most recent
> progress report indicated that he was making satisfactory progress at school
> and was reading at a sixth-grade level.  Detective Lullo testified that
> [Quezada] had no difficulty communicating with the officers and he
> understood everything that occurred.  Lullo explained all of [Quezada's] rights
> to him and asked him if he understood each right.  There was no evidence
> whatsoever that [Quezada] did not understand the explanation of his rights or
> the concept of waiver.  He was not under the influence of drugs or alcohol at
> the time of his questioning.  In addition, [Quezada] had been arrested before
> and had experience dealing with the police.  He took special care not to
> implicate anyone but himself in the crime, refusing to answer certain questions
> and asking to hear the tape after he had finished his statement. [Quezada] thus
> displayed a familiarity with and a certain degree of control over the
> interrogation process that belie his assertion that he was incapable of making a
> knowing and intelligent waiver.  For all of these reasons, we conclude that
> [Quezada's] waiver of his constitutional rights was both knowing and
> intelligent.

*Quezada*, 780 N.E.2d at 801-802.

Quezada's *Miranda* waiver was voluntary in the sense that it was made with a

full awareness of both the nature of the right being abandoned and the consequences

of the decision to abandon it, as well as the right to terminate the interrogation at any

point until an attorney was present to consult. *Jackson v. Frank*, 348 F.3d at 663 n.5 ("'[t]he state court's historical findings as to the petitioner's knowledge, understanding, and determination . . . are . . . entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1) . . . .'") (quoting *Henderson*, 97 F.3d at 946); *see also Everett v. Barnett*, 162 F.3d 498, 500 (7th Cir. 1998) (explaining that whether a *habeas corpus* petitioner's *Miranda* waiver was voluntary is a question of law to which the § 2254(d) standard of review applies, although the underlying historical facts are afforded the presumption of correctness under § 2254(e)(1)). Quezada has not shown by clear and convincing evidence, as required by 28 U.S.C. § 2254(e)(1), that this factual finding is based on an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d)(2). Additionally, Quezada has failed to present the district court with clear and convincing evidence relevant to the interrogation that would suggest that the Illinois Supreme Court was well outside the realm of permissible legal conclusions when it determined that Quezada's *Miranda* rights were not knowingly and intelligently waived. Therefore, we find that Quezada has not met his burden of proof on his claims that he did not knowingly and intelligently waived his rights, thus making his confession voluntary

## II. Ineffective Assistance of Counsel (Claim 2-5)

Quezada argues in Claim 2 that counsel was ineffective because counsel "failed to request that portions of defendant's taped statement where [sic] exercised his right to remain silent be edited from the tape and redacted from the transcripts, failed to object to Detective Lullo's and Detective Troiola's testimony regarding defendant's failure to answer particular questions; and failed to object to the prosecutors [sic] reference, during closing argument, to the defendant's refusal to answer particular questions and the prosecutor's reference to the tape as 'unrebutted' evidence." (Pet. 5(B)). Quezada argues in Claim 3 that counsel was ineffective because counsel's strategy was deficient in that "[t]he evidence offered by the defense at the hearing on the motion to suppress . . . offered no support for the contention in the written motion that [Quezada] did not knowlyingly [sic] and/or voluntarily waive his miranda [sic] rights" and that "[t]estimony by [Quezada] would have supported that contention" that Quezada was not allowed by the police to assert his Fifth Amendment right to remain silent. (Pet. 6(A)). Quezada argues in Claim 4 the failure of trial counsel to "adequately discuss a defense with [Quezada], the change to a defense of self defense after the trial began where the evidence in the law did not support it, and the failure to . . . discuss" whether Quezada should testify at trial constituted ineffective assistance of counsel. (Pet. 6(B)). Quezada argues in Claim 5 trial counsel was ineffective because "[t]here was no reasonable basis under

the law to rely on a defense of self defense . . . ." (Pet. 6(C)).  Respondent contends

that Quezada has procedurally defaulted Claims 2-5.

On direct appeal of his conviction to the Illinois Appellate Court, with respect

to ineffective assistance of counsel, Quezada raised claims that counsel was

ineffective because counsel:  (1) made remarks during opening statement that were

prejudicial to petitioner; (2) switched trial strategy in the middle of trial from a

wrongful identification defense to an affirmative defense of self-defense; (3) failed to

object to multiple hearsay and admissibility grounds; (4) failed to object to testimony

by officers concerning Quezada's failure to answer particular questions about

persons involved; and (5) failed to object to the State's reference during closing to

Quezada's refusal to answer particular questions by the officers and a prosecutor's

reference to an audio tape as unrebutted evidence.  On November 27, 2002, the

Illinois Appellate Court affirmed Quezada's conviction, and Quezada filed a petition

for leave to appeal in the Illinois Supreme Court.  However, in Quezada's petition to

the Illinois Supreme Court, he only raised claims that the trial court improperly

denied his motion to suppress statements where Quezada's confession was

involuntary, and that his *Miranda* waiver was not made knowingly and intelligently.

The petition was denied on February 5, 2003.

On July 31, 2003, Quezada then filed a post-conviction petition in Kane

County Circuit Court where, among other claims, he again argued that trial counsel was ineffective because counsel failed to: (1) pursue a motion to suppress allegedly involuntary false statements; (2) introduce evidence that Quezada was not allowed by the police to assert his Fifth Amendment right to remain silent, (3) prepare a defense before trial and then asserted self-defense on the second day of trial; (4) discuss defense strategy with Quezada; (5) ask Quezada if he wanted to testify at trial; and (6) move to suppress Quezada's identification by two trial witnesses. The court denied the petition, and Quezada appealed to the Illinois Appellate Court. On appeal, Quezada's trial counsel filed a motion to withdraw as appellate counsel pursuant *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Quezada was given an opportunity to respond and did not do so. The Illinois Appellate Court granted counsel's motion to withdraw and affirmed the judgment on November 15, 2005. Following this decision, Quezada did not appeal the ineffective assistance of counsel claims. Thus, at no time did Quezada present his ineffective assistance of counsel claims to the Supreme Court of Illinois during either the direct appeal process or the post-conviction appeal process and his ineffective assistance of counsel claims in Claims 2-5 are therefore procedurally defaulted. *See Grigsby*, 456 F.3d at 732 (stating that a petitioner must pursue appellate review "to the highest state court to preserve federal review"); *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999).

Since Quezada did not complete a full round of appellate review of Claims 2-5, he is procedurally defaulted from bringing Claims 2-5, unless he can show cause for his failure to raise them at the time, and actual prejudice, or that the refusal to review the issues would result in a "fundamental miscarriage of justice." *See O'Sullivan*, 526 U.S. at 848 (stating that "failure to present three of [petitioner's] federal *habeas* claims to the Supreme Court of Illinois in a timely fashion . . . resulted in a procedural default of those claims"; *Farrell v. Lane*, 939 F.2d 409, 410-12 (7th Cir. 1991)(stating that "[a] federal court cannot address the merits of constitutional claims brought in a petition for *habeas corpus* relief unless the state courts have had a full and fair opportunity to review them" and that failure to do so will constitute a procedural default).

Quezada's sole reason for not presenting Claims 2-5 to the Supreme Court of Illinois are that "[c]ounsel was unable to advance any meritorious claims." (Pet. 6). However, Quezada's counsel filed a motion to withdraw as counsel, Quezada was given the opportunity to respond and he did not, and the Illinois Appellate Court granted appellate counsel's motion to withdraw and the Appellate Court affirmed the Circuit Court's denial of post-conviction relief. Quezada simply did not appeal the denial of Claims 2-5 to the Supreme Court of Illinois. As such, Quezada has not shown that he had cause for his failure to seek leave to the Supreme Court of Illinois,

and that refusal by this court to review the issues will result in a fundamental miscarriage of justice. *See Todd*, 283 F.3d at 848-49 (rejecting petitioner's defaulted claims and refusing to address the cause or actual innocence issues where the petitioner did not raise them); *Rodriguez*, 193 F.3d at 917. Thus, Claims 2-5 have been procedurally defaulted by Quezada and Quezada has failed to meet his burden on Claims 2-5. Additionally, even if Quezada's claims were not procedurally defaulted, we find that the claims are not meritorious.

III.  Due Process/Ineffective Assistance of Appellate Counsel (Claim 6)

Quezada argues in Claim 6 that he "was denied Due Process of Law by the court's erroneous consideration of a misdemeanor conviction of [Quezada] as aggravstion [sic] pursuant to 735 ILCS 5/5-3-3.2A." (Pet. 6(C)). Respondent failed to address Claim 6 in its answer to the Petition.

District courts may consider, *sua sponte*, whether a petitioner has procedurally defaulted petition for writ of *habeas corpus*, has failed to exhaust his state court remedies, or has exceeded the time he has to file his petition. *Day v. McDonough*, 126 S.Ct. 1675, 1684 (2006). This court is required to "accord the parties fair notice and an opportunity to present their positions," to ensure that "the petitioner is not significantly prejudiced," and to "determine whether the interests of justice would be

better served by addressing the merits or by dismissing the petition." *Id.* (citing

*Granberry v. Greer*, 481 U.S. 129, 136 (1987)(internal quotations omitted)). The

court cannot raise the procedural bar defense if it has been implicitly or explicitly

waived by the Respondent. *See Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir.

2004)(noting that procedural default "is an affirmative defense that the State is

obligated to raise and preserve, and consequently one that it can waive"); *Henderson*

*v. Thieret*, 859 F.2d 492, 498 (7th Cir. 1988)(stating that a district court is not to

"override a state's decision implicit or explicit . . . to forego that defense").

However, Respondent's "simple failure . . . to assert a procedural default is normally

not enough, standing alone, to demonstrate the intent to relinquish the defense that is

the essence of true waiver." *Perruquet*, 390 F.3d at 517. Therefore, a district court

can raise the issue *sua sponte*. *Henderson*, 859 F.2d at 498.

On direct appeal, Quezada did not address his denial of Due Process claim,

nor did he include the claim in his petition for leave to appeal in the Supreme Court

of Illinois. However, on July 31, 2003, Quezada filed a state post-conviction petition

in Kane County Circuit Court and claimed that "[t]he Court acknowledged this error

at the hearing on the motion to reduce sentence but then let the 45 year sentence

stand" and that "the Court should have reduced the petitioner's sentence to rectify

this error." (G. Ex. G 4). In the alternative, Quezada claimed that "[t]o the extent

that [the Due Process Issue] should have been raised on direct appeal . . . the petitioner was denied effective assistance of appellate counsel." After an evidentiary hearing and arguments of counsel, the court found that since the trial court had addressed the issue in a motion for reconsideration, counsel was not ineffective in deciding not to pursue appeal and the court denied Quezada's post-conviction petition. Quezada then appealed to the Illinois Appellate Court. Additionally, Quezada's counsel filed a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*. Quezada was given an opportunity to respond, but did not respond. On November 5, 2005, the Illinois Appellate Court affirmed the Kane County Circuit Court's denial of post-conviction relief and granted counsel's *Finley* motion.

A petition for writ of *habeas corpus* filed by a *pro se* petitioner is afforded "generous interpretation." *Lewis*, 390 F.3d at 1027. As such, Claim 6 may be interpreted as either raising a Due Process claim or an ineffective assistance of appellate counsel that was argued in the alternative in Quezada's petition for post-conviction relief. However, like the issues contained in Claims 2-5, Quezada did not raise either a Due Process claim or an ineffective assistance of appellate counsel claim during his direct appeal to the Supreme Court of Illinois or in his post-conviction appeal to the Supreme Court of Illinois. Quezada provides absolutely no arguments upon which this court could excuse a procedural default based on a

showing of cause and prejudice, a miscarriage of justice, or a showing that the trial court's dismissal of his potential claims alleged in Claim 6 was contrary to established law. Quezada has failed to give the state courts a "full and fair opportunity to review" his constitutional claims, thereby procedurally defaulting such claims. *Farrell*, 939 F.2d at 410-12. Therefore, based on the above, Quezada has procedurally defaulted Claim 6 and Quezada has failed to meet his burden on Claim 6. Additionally, even if Quezada's claim was not procedurally defaulted, we find that the claim is not meritorious.

## CONCLUSION

Based on the foregoing analysis, we deny Quezada's petition for writ of *habeas corpus*.


_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated: November 16, 2006